## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ADVANTAGE MEDICAL ASSOCIATES, P.A., a New Jersey professional association, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | No.    24cv2992 |
| Plaintiff, | ) ) | **CLASS ACTION** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ELECTROSTIM MEDICAL SERVICES, INC., | ) ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Advantage Medical Associates, P.A. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, which are based on personal knowledge, alleges the following upon information and belief against defendant Electrostim Medical Services, Inc. ("EMSI" or "Defendant") after a reasonable investigation by counsel.

## PRELIMINARY STATEMENT

1.  The Telephone Consumer Protection Act, 47 U.S.C. § 227, prohibits sending any "unsolicited advertisement" by fax. 47 U.S.C. § 227 (b)(1)(C).

2.  On March 25, 2020, Plaintiff received an unsolicited advertisement on

its fax machine. A true and correct copy is attached as **Exhibit A**.

3.    The fax advertised the commercial availability or quality of property, goods, or services available from EMSI, including "E-Stim Devices and Braces."

4.    EMSI did not have prior express invitation or permission to send advertising material to Plaintiff by fax.

5.    EMSI did not have an "established business relationship" ("EBR") with Plaintiff. 47 U.S.C. § 227(a)(2).

6.    The TCPA provides a private right of action and statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). If the Court finds that EMSI willfully or knowingly violated the Act, it may increase the award to $1,500 per violation. The Court may also grant injunctive relief.

7.    On behalf of itself and all others similarly situated, Plaintiff brings this action seeking statutory damages and other relief for each violation of the TCPA occurring within the four years before this action was commenced and continuing until the Court directs notice to the class.

## PARTIES, JURISDICTION, AND VENUE

8.    Plaintiff Advantage Medical Associates, P.A. is a New Jersey professional association operating a medical practice in East Brunswick, New Jersey.

9.      Defendant Electrostim Medical Services, Inc. is a Florida corporation with its principal place of business located 3504 Cragmont Drive, Ste. 100, Tampa, FL 33619. Defendant is authorized to do business in New Jersey and its registered agent is: National Registered Agents, Inc., 820 Bear Tavern Road, West Trenton, NJ, 08628.

10.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

11.     Personal jurisdiction exists over Defendant in New Jersey because it has committed tortious acts in the State by sending unlawful fax advertisements to New Jersey residents and because it is authorized to do business and doing business in the State.

12.     Venue is proper in the District Court of New Jersey because Plaintiff received the unlawful fax within this District and Defendant has transacted business and committed statutory torts within this District.

## FACTS

13.     Plaintiff operates a medical practice at 561 Cranbury Rd, East Brunswick, NJ 08816.

14.     On March 25, 2020, Plaintiff received a "junk fax" advertisement on its facsimile machine connected to Plaintiff's telephone fax number, 732-390-1900. A true and correct copy of the advertisement is attached as **Exhibit A**.

15.    **Exhibit A** advertises the commercial availability or quality of Defendant's property, goods, or services.

16.    According to its website, "EMSI is a privately held company located in Tampa, Florida. We are a medical device company specializing in home electrical stimulation devices, bracing, and accessories for pain management and physical rehabilitation." https://www.wecontrolpain.com (last visited March 11, 2024).

17.    **Exhibit A** states, "Now is the perfect time to add EMSI to your telehealth services."

18.    **Exhibit A** states, "EMSI offers a variety of conservative, safe, and cost-effective treatment options for patients suffering from pain and inflammation associated with many diagnoses & conditions."

19.    **Exhibit A** displays EMSI's corporate logo, phone number (800-588-8383), and website (wecontrolpain.com).

20.    The fax header at the top of **Exhibit A** includes the date and time of the fax transmission ("03/25/20" "09:33:56"), a telephone number ("813-931-2369"), Plaintiff's fax number ("7323901900"), and a person's name ("Marisa Mareiniss").

21.    The telephone number at the top of **Exhibit A**, 813-931-2369, is the telephone number for EMSI's customer service department. https://wecontrolpain.com/product-returns-policy (last visited 3/11/24)

22.    Marisa Mareiniss, identified at the top of **Exhibit A**, is currently employed as an "Area Sales Manager" for "EMSI - Electrostim Medical Services, Inc.," and was an "Assistant Territory Manager" for the company in March 2020. *See* https://www.linkedin.com/in/marisa-mareiniss-551224100/ (last visited 3/11/24).

23.    "Michelle Guercio," identified on the lower 1/3 of **Exhibit A**, is currently employed by Defendant as a "District Manager" in Neptune, New Jersey, and was an "Area Manager" for the company in March 2020. *See* https://www.linkedin.com/in/michelle-guercio-21b6a5158/ (last visited 3/11/24).

24.    **Exhibit A** is a standardized form containing material that advertises the commercial availability or quality of property, goods, or services.

25.    Defendant did not have Plaintiff's prior express invitation or permission to send advertising material by fax.

26.    Plaintiff had no "established business relationship" with Defendant.

27.    Defendant's unsolicited fax advertising wasted valuable resources and imposed costs on Plaintiff and the other fax recipients.

28.    Like other healthcare providers, Plaintiff uses its fax machine to send or receive speedy, private communications, not to advertise or receive unsolicited advertisements.

29.    In contrast to paper junk mail that arrives in a USPS mailbox, a junk

fax can be received only at the recipient's ten-digit fax number and only using special equipment—a telephone facsimile machine—paid for by the recipient.

30.    Fax transmissions are sent between ten-digit numbers assigned by the North American Numbering Plan Administrator ("NANPA")—from one number in the integrated North American Numbering Plan ("NANP") to another NANP number—using the Public Switch Telephone Network ("PSTN") and the ITU T.30 faxing protocol as regulated by the FCC.[1]

31.    Each successful fax transmission crosses the public, regulated telephone network and the regular telephone lines.

32.    Somebody must review and scrutinize a document received by fax to discern whether it is an authorized, important, priority communication regarding a patient or their treatment.

33.    Each unsolicited fax advertisement invades the recipient's privacy and wastes the recipient's valuable time.

34.    During the time the sending fax equipment is communicating with the receiving machine, the receiving machine might be prevented from sending or receiving an authorized fax.

35.    Often, a junk fax automatically prints to paper, as it did when Plaintiff

---

[1]    NANP numbers are ten-digit numbers consisting of a three-digit Numbering Plan Area code, commonly called an area code, followed by a seven-digit local number.

received **Exhibit A**, thus wasting the recipient's paper and ink toner.

36.    Each unsolicited facsimile transmission causes concrete damage to its recipient.

37.    The TCPA permits a person or entity to maintain an action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. 227 (b)(3)(B).

38.    For itself and each class member, Plaintiff seeks statutory, liquidated damages of $500 for each junk fax Defendant sent during the statutory period in violation of the TCPA or the FCC's regulations.

## CLASS REPRESENTATION ALLEGATIONS

39.    Plaintiff brings this action on behalf of itself and a class of all others similarly situated (the "Class") initially defined as follows: "All persons or entities sent one or more documents by facsimile transmission on or after March 13, 2020, encouraging them to contact EMSI about e-stim devices or braces."

40.    The Class includes all persons and entities that have received advertising material from Defendant by fax transmission at any time after March 12, 2020.

41.    Excluded from the class are Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers and directors,

Defendant's legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, and his or her family.

42.    **Exhibit A** is a "form letter"-type solicitation.

43.    Plaintiff intends to discover and include within this case all unsolicited advertisements Defendant sent by fax. *See* **Exhibit B**, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

44.    Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about Defendant's fax advertising practices.

45.    This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. The action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23(b)(1)(A). Finally, common questions of law or fact predominate over any individual questions and class representation is the superior method to adjudicate this controversy under, as required by Rule 23(b)(3).

46.    **Numerosity/Impracticality of Joinder:** On information and belief, the class includes more than 40 persons and is so numerous that individual joinder of its members is impracticable. Plaintiff intends to discover the identities of the class

8

members in Defendant's records or the records of third parties. **Exhibit A** is a form template, addressed to nobody, displaying Defendant's graphics and trademarks, and obviously sent to a list of targets.

47.    **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a.    Whether Defendant sent unsolicited advertisements by fax;

    b.    Whether **Exhibit A**—and other, similar documents sent by facsimile transmission—contained "material advertising the commercial availability or quality of property, goods, or services";

    c.    The manner and method used to compile or obtain the list(s) of intended recipients of Defendant's fax advertisements;

    d.    Whether Defendant obtained "prior express invitation or permission" to send advertising material by facsimile transmission to the intended recipients;

9

e.    Whether Defendant included on the first page of its advertisements a clear and conspicuous opt-out notice including all content required by the TCPA and the FCC's regulations;

f.    Whether the Court should award statutory damages to Plaintiff and the other class members;

g.    Whether Defendant violated the TCPA or the FCC's regulations knowingly or willfully and, if so, whether the Court should treble the statutory damages; and

h.    Whether the Court should enjoin Defendant from faxing advertising material in the future.

48.    **Typicality of Claims**: Plaintiff's claims are typical of the claims of the other class members because they were injured by the same wrongful practices. Plaintiff and the other members of the class received unsolicited advertisements by facsimile transmission. If Plaintiff prevails on its claims, then the putative class members will prevail as well.

49.    **Adequacy of Representation:** Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this

action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

50. **Prosecution of Separate Claims Would Yield Inconsistent Results**: Common questions of fact and law predominate. Separate adjudication of class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if either Defendant chooses to advertise by fax again in the future.

51. **A Class Action is the Superior Method of Adjudicating the Common Questions of Law or Fact that Predominate over Individual Questions**: A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit because individual litigation would be economically unfeasible and procedurally impracticable. There is no other TCPA lawsuit pending against Defendant. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to

the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

52.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

53.    Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons.

54.    The TCPA provides in pertinent part as follows: 47 U.S.C. § 227 (b)(1)(C).

(b) Restrictions on use of automated telephone equipment

   (1) Prohibitions

      It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

                       * * *

      (C)    to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

         (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

         (ii) the sender obtained the number of the telephone facsimile machine through--

            (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or ….

47 U.S.C. § 227 (b)(1)(C).

55.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

56.    **Exhibit A** is an unsolicited advertisement Defendant sent by facsimile transmission without Plaintiff's prior express invitation or permission.

57.    The TCPA provides a private right of action as follows:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

13

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

58.    The TCPA permits an advertiser to fax an otherwise "unsolicited advertisement" to a person with whom the sender has an "established business relationship," but the first page of the advertisement must contain a specific, clear, and conspicuous opt-out notice, or else it violates the TCPA. 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii).

59.    The FCC's regulations of opt-out notices on facsimile advertisements are set forth in 47 C.F.R. § 64.1200(a)(4)(iii).

60.    Plaintiff did not have an "established business relationship" with Defendant.

61.    Defendant violated 47 U.S.C. § 227, *et seq*., and the FCC's regulations, by faxing advertisements to Plaintiff and the other class members without their prior express invitation or permission and, to the extent Defendant contends it sent any facsimile on the basis of an "established business relationship," by failing to include

the clear, conspicuous, and content-rich opt-out notice on the first page of the advertisement.

62.    Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the recipients are unable to avoid the burdens imposed by this form of advertisement.

63.    The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if its actions were negligent.

64.    Defendant is liable because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority, and ratification.

65.    Defendant's junk faxes caused injury to Plaintiff and the other class members. Receiving a junk fax causes the recipient to consume and use paper and toner. Receiving a junk fax uses the recipient's fax machine or limited fax-receiving capabilities. Receiving and reviewing a junk fax wastes the recipient's valuable time.

The junk faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

66. The Court, in its discretion, can treble the statutory damages for each violation that was knowing or willful. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in their favor and against Defendant, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA or the FCC's regulations;

C. That the Court treble the statutory damages to $1,500 per violation if it finds that Defendant violated the TCPA or the FCC's regulations knowingly or willfully;

D. That the Court enter an injunction prohibiting Defendant from sending any advertising material by fax without first demonstrating that prior express invitation or permission has been obtained or that the document to be sent by fax transmission includes the required opt-out notice; and

E. That the Court award costs and such further relief as the Court may deem just and proper.

Respectfully submitted,

Advantage Medical Associates, P.A., individually and as the representative of a class of similarly-situated persons,


By:      Matthew N. Fiorovanti /s


Michael J. Canning, Esq.
Matthew N. Fiorovanti, Esq.
Giordano, Halleran & Ciesla, P.C.
125 Half Mile Road, Suite 300
Red Bank, New Jersey 07701-6777
Telephone: 732-741-3900
Email: MCanning@ghclaw.com
Email: MFiorovanti@ghclaw.com

Phillip A. Bock (pro hac vice to be submitted)
David M. Oppenheim (pro hac vice to be submitted)
Bock Hatch & Oppenheim, LLC
203 N. La Salle St., Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500
Email: service@classlawyers.com

**EXHIBIT A**

03/25/20  09:33:56  813-931-2369          ->          7323901900 Marisa Marciniss     Page 002

NOW IS THE PERFECT TIME TO
ADD EMSI TO YOUR

# TELEHEALTH SERVICES

*In response to increased provider requests to assist their patients in continuing the necessary treatments at home, we have accelerated our remote patient instruction and shipping capacity.*
*Our E-Stim Devices and Braces are readily available as a daily treatment solution.*



EMSI offers a variety of conservative, safe, and cost-effective treatment options for patients suffering from pain and inflammation associated with many diagnoses & conditions. Effective and easy to use, patients can benefit from Interferential Current, Muscle Stimulation, TENS, Flex Garments, Hinged Knee Braces, LSO Back Braces, and Offloader Knee Braces.

OUR TEAM IS AVAILABLE FOR REMOTE FITTING AND
INSTRUCTION ON ALL DEVICES.
TO EXPEDITE ANY NEEDS CONTACT YOUR LOCAL REP:

## Michelle Guercio

mguercio@wecontrolpain.com
cell:732-956-7609 / fax:866-928-4227



EMSI
800-508-0353
www.wecontrolpain.com

Scanned with CamScanner

**EXHIBIT B**

# BOCK HATCH & OPPENHEIM, LLC

203 N. La Salle St., Ste. 2100

Chicago, IL 60601

312-658-5500 (Phone) • 312-658-5555 (Fax)

March 13, 2024

**Attached to Class Action Complaint**

Electrostim Medical Services, Inc.
3504 Cragmont Dr, Ste 100
Tampa, FL 33169

Re:   Demand for Preservation of Tangible Documents and Electronically Stored Information in *Advantage Medical Associates, P.A. v. Electrostim Medical Services, Inc.*

Dear Sir or Madam:

We represent Advantage Medical Associates, P.A. ("Plaintiff") on behalf of itself and a class of similarly situated persons. Plaintiff alleges in the captioned case that Electrostim Medical Services, Inc. ("Defendant") sent unsolicited advertisements by fax in violation of the TCPA. If your attorney wishes to speak with someone about this matter, please have them call the undersigned.

We consider electronic data to be a valuable and irreplaceable source of discovery and evidence in this matter. The laws and rules prohibiting the destruction of evidence apply to electronic data with the same force as they apply to other kinds of evidence.

Plaintiff hereby demands that you preserve all documents, tangible things, and electronically-stored information potentially relevant to the issues in this cause. As used in this document, "you" and "your" refers to Defendant, including its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories, and cell phones).

Electronically-stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example, but not as an exclusive

Page 2 of 7

list) potentially relevant information electronically, magnetically, or optically stored as:

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Network Access and Server Activity Logs;
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Project Management Application Data; and
- Back Up and Archival Files (e.g., Zip, .GHO).

ESI also includes information or data stored on proprietary software, databases, or systems.

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (eff. 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, a court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive Plaintiff of its right to secure the evidence or the Court of its right to adjudicate the issue.

## A.    Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI including, without limitation, information with the earlier of a Created or Last Modified date on or after January 1, 2019, through the date of this demand and concerning:

a.    All electronic mail ("e-mail") and information about e-mail (including message contents, header information, and logs of e-

Page 3 of 7

mail systems usage) sent or received by Defendant, anyone relating to Defendant, or any employees or agents thereof;

b.  All other e-mail and information about e-mail (including message contents, header information, and logs of e-mail systems usage) containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

c.  All databases (including all records and field structural information in such databases,) containing any reference to and/or information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof, including but not limited to Customer Relationship Management systems (e.g., Salesforce);

d.  All logs of faxing activity (including all reports indicating success or failure of attempted transmission) containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

e.  All word processing files and file fragments containing information about Defendant, Defendant's intended fax recipients, or any employees or agents thereof;

f.  All electronic data files and file fragments created by application programs that process financial, accounting, and billing information related to Defendant, or any employees or agents thereof;

g.  All files and file fragments containing information from electronic calendars and scheduling programs regarding Defendant, or fax transmissions sent on behalf of Defendant, or any employees or agents thereof;

h.  All electronic data files and file fragments created or used via electronic spreadsheet programs where such data files contain information about Defendant or Defendant's intended fax recipients;

i.  All other electronic data containing information about Defendant or Defendant's intended fax recipients; and

Page 4 of 7

    j.    All e-mail from third party sources that may contain references or correspondence relating to Plaintiff, Defendant and/or Defendant's intended fax recipients.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents, or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things, and other potentially relevant evidence.

## B.    Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify, and modify or suspend, features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

## C.    Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems, and archives from seeking to modify, destroy, or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data

Page 5 of 7

shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space, and the swap file.

With respect to the hard drives and storage devices maintained offsite, including Cloud Based Data Storage, including any File Transfer Protocol Host Account or Server Storage, whether provided by a server owned or maintained by Defendant or its subsidiaries, agents, or contractors, or maintained by a company on behalf of Defendant, demand is made that you preserve the ESI on those devices.

With regard to all data storage for Defendant or any employee, subsidiary, contractor, or agent thereof, stop any activity which my result in the loss of such electronic data, including the rotation, destruction, overwriting, or erasure of such media in whole or in part, unless a true and correct copy of each such electronic file has been made and steps have been taken to assure that such copy will be preserved and accessible for purposes of this litigation.

### D.     Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### E.     Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including

Page 6 of 7

deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For e-mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### F.    Servers

With respect to servers like those used to manage e-mail (*e.g.*, Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, *e.g.*, its RAID configuration and whether it can be downed or must be online 24/7. Please call to discuss the sufficiency of preservation methods if you have questions.

### G.    Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant ESI, including programs, utilities, logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters, legacy or proprietary devices, and the like.

### H.    Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically-stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### I.    Agents, Attorneys, and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian, or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### J.    Preservation Protocols

We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory of the systems and media to be preserved. Alternatively, if you will promptly disclose

Page 7 of 7

the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.

### K.    Do Not Delay Preservation

I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted because of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss, or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

### L.    Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

Sincerely,

*/s/ Phillip A. Bock*

Phillip A. Bock
Bock Hatch & Oppenheim, LLC
203 N La Salle St., Ste. 2100
Chicago, IL 60601