NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ADVANTAGE MEDICAL ASSOCIATES, P.A.,<br><br>        Plaintiff,<br><br>    v.<br><br>ELECTROSTIM MEDICAL SERVICES, INC.,<br><br>        Defendant. | Civil Action No. 24-2992 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

    **THIS MATTER** comes before the Court upon Defendant Electrostim Medical Services, Inc.'s Motion for Summary Judgment.  (ECF No. 40.)  Plaintiff Advantage Medical Associates, P.A. opposed, and Defendant replied.  (ECF Nos. 41, 42.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendant's Motion is **DENIED**.

I.    **BACKGROUND**[1]

    A.    **Factual Background**

    Plaintiff is a medical practice in East Brunswick, New Jersey.  (ECF No. 41-1 at 6; ECF No. 42-1 at 2.)  Dr. Misha Basalaev is the president of, and practices internal medicine and primary

---

[1]    On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party."  *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).  The factual circumstances surrounding this action, as revealed through discovery, are set forth in the parties' submissions in accordance with Local Civil Rule 56.1.  Defendant's Statement of Undisputed Material Facts is at ECF No. 40-1,

care at, the medical practice.  (ECF No. 40-1 at 1; ECF No. 41-1 at 1, 6; ECF No. 42-1 at 2.)  Defendant sells electrostimulation devices, which are used to treat chronic pain.  (*See* ECF 40-1 at 2; ECF No. 41-1 at 3, 7; ECF No. 42-1 at 2.)  At issue in the case is a fax Defendant sent to Plaintiff in 2020 and, more specifically, whether Plaintiff consented to receiving that fax.

About once or twice a year, Dr. Basalaev prescribes electrostimulation devices to patients who experience chronic pain.  (ECF No. 40-1 at 2; ECF No. 41-1 at 2, 7; ECF No. 42-1 at 2, 6-7.)  In these instances, a specialist—such as a physical therapist—is ordinarily the individual who first determines a patient should receive care via an electrostimulation device, and that specialist then contacts Dr. Basalaev.  (*See* ECF 40-1 at 2; ECF No. 41-1 at 2.)  This is because a medical doctor, like Dr. Basalaev, must sign a "letter of medical necessity" for a patient to receive electrostimulation devices.  (ECF No. 41-1 at 7; ECF No. 42-1 at 2.)  The letter of medical necessity serves as a prescription.  (ECF No. 41-1 at 7; ECF No. 42-1 at 2.)  It articulates the reasons why the patient needs an electrostimulation device and describes the specific device being prescribed.  (ECF No. 40-1 at 2; ECF No. 41-1 at 2-3.)

Once a patient has a prescription for an electrostimulation device, Defendant can sell the device to the patient listed on the prescription.  (*See* ECF No. 41-1 at 7; ECF No. 42-1 at 2.)  While the parties appear to agree that patients can buy the devices directly from Defendant, Dr. Basalaev testified that he does not "have an understanding of who provides the [] device after [he has] made the prescription."  (ECF No. 40-5 at 5:15-18.)  In other words, when Dr. Basalaev signs a prescription, he does not know whether it is the "pharmacist," the "supply stores"—like

_____

Plaintiff's Response to Defendant's Statement of Undisputed Material Facts and Supplemental Statement is at ECF No. 41-1, and Defendant's Response to Plaintiff's Supplemental Statement of Facts and Reply Statement of Facts is at ECF No. 42-1.  Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Defendant—or "the physical therapists" who ultimately provide the prescribed devices to patients. (*Id.* at 5:18-25.)

Dr. Basalaev's prescriptions have listed Plaintiff's fax number in the past. The parties agree that Plaintiff includes its fax number on prescriptions so that "pharmacists and medical providers may contact [Dr. Basalaev] if they have questions about the patient or the prescribed treatment." (ECF No. 41-1 at 6; ECF No. 42-1 at 2.) The parties disagree, however, on whether Plaintiff also has a second, broader purpose for including its number on the prescriptions. Defendant argues that "Plaintiff's purpose in providing Plaintiff's Fax Number on letters of medical necessity, and other prescriptions, is to facilitate the services authorized for its patients." (ECF No. 40-1 at 3.) In support of its assertion, Defendant relies on Dr. Basalaev's deposition testimony in which he states: "[I]f I give a prescription and the pharmacist o[r] the physical therapist has any questions they will not be able to contact me if they have any questions. So [for] ease in patient care I provide both the fax number and the phone number to facilitate it, the services." (*Id.*; *see also* ECF No. 40-5 at 10:2-7.)

It is undisputed, however, that on May 9, 2017, Dr. Basalaev wrote a prescription for his patient, G.S., to receive physical therapy via an electrostimulation device because of neck and shoulder pain. (ECF No. 40-1 at 2; ECF No. 41-1 at 3.) Prior to writing the prescription, Dr. Basalaev received a message from a physical therapist who examined G.S. and recommended that G.S. receive one of Defendant's electrostimulation products. (ECF No. 41-1 at 7; ECF No. 42-1 at 3.) The electrostimulation product was called a "Flex Gar." (ECF No. 40-1 at 3; ECF No. 41-1 at 4.) Defendant then sent Plaintiff a pre-filled letter of medical necessity form for Dr. Basalaev to sign, which included Plaintiff's fax number pre-populated on the form. (ECF No. 41-1 at 7; ECF No. 42-1 at 3.) Plaintiff is aware that its fax number is available online. (ECF No. 40-1 at 2;

ECF No. 41-1 at 1.)  On May 24, 2017, Dr. Basalaev signed and returned the filled-out letter of medical necessity, which contained Plaintiff's fax number.  (ECF No. 40-1 at 3; ECF No. 41-1 at 3, 8; ECF No. 42-1 at 3.)

Nearly three years later, on March 25, 2020, Defendant's employee, with Defendant's knowledge and approval, sent the fax at issue in this litigation to Plaintiff and to dozens of other medical providers.  (ECF No. 40-1 at 3; ECF No. 41-1 at 4, 8; ECF No. 42-1 at 3.)  Transmitted during the beginning of the COVID-19 pandemic, Defendant's purpose in sending the fax to Plaintiff and other medical providers was to highlight that Defendant was still providing its business services during the pandemic and could provide device instruction remotely.  (ECF No. 41-1 at 9; ECF No. 42-1 at 5.)  The fax opened with, "NOW IS THE PERFECT TIME TO ADD [DEFENDANT] TO YOUR TELEHEALTH SERVICES."  (ECF No. 41-1 at 8; ECF No. 42-1 at 4 (emphasis in original).)  The fax closed with, "OUR TEAM IS AVAILABLE FOR REMOTE FITTING AND INSTRUCTION ON ALL DEVICES.  TO EXPEDITE YOUR NEEDS CONTACT YOUR LOCAL REP."  (ECF No. 41-1 at 9; ECF No. 42-1 at 5) (emphasis in original).)  The fax also stated:

> In response to increased provider requests to assist their patients in continuing the necessary treatments at home, we have accelerated our remote patient instruction and shipping capacity.  Our E-Stim Devices and Braces are readily available as a daily treatment solution.
>
> [Defendant] offers a variety of conservative, safe, and cost-effective treatment options for patients suffering from pain and inflammation associated with many diagnoses & conditions.  Effective and easy to use, patients can benefit from Inferential Current, Muscle Stimulation, TENS, Flex Garments, Hinged Knee Braces, LSO Back Braces, and Offloader Knee Braces.

(ECF No. 41-1 at 8-9; ECF No. 42-1 at 4-5.)  Defendant's employee who sent the fax "agreed that there were no words in the letter of medical necessity that Dr. Basalaev signed indicating that he

or Advantage Medical had given prior express invitation or permission to receive the [fax]."  (ECF No. 41-1 at 10; ECF No. 42-1 at 6.)  The employee had not considered whether Plaintiff expressly consented to receive the fax.  (ECF No. 41-1 at 10; ECF No. 42-1 at 6.)  However, after Plaintiff received this fax, it never told Defendant to stop sending faxes to Plaintiff.  (ECF No. 40-1 at 4; ECF No. 41-1 at 5.)

Several days later, on March 30, 2020, Plaintiff sent a separate letter of medical necessity to Defendant.  (ECF No. 40-1 at 4; ECF No. 41-1 at 6.)  This 2020 letter prescribed an electrostimulation device to another of one of Dr. Basalaev's patients named J.N.  (ECF No. 40-1 at 4; ECF No. 41-1 at 6.)  That letter also contained Plaintiff's fax number.  (ECF No. 40-1 at 5; ECF No. 41-1 at 6.)

Dr. Basalaev testified at his deposition that he did not recall communicating with any of Defendant's representatives apart from receiving and sending letters of medical necessity and receiving the one fax at issue in this litigation.  (ECF No. 41-1 at 10; ECF No. 42-1 at 5.)

## B.    Procedural Background

On March 14, 2024, Plaintiff filed a one-count Class Action Complaint asserting violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.  (ECF No. 1.)  Plaintiff defined the class as "[a]ll persons or entities sent one or more documents by facsimile transmission on or after March 13, 2020, encouraging them to contact [Defendant] about [electrostimulation] devices."  (*Id.* ¶ 39.)  On June 28, 2024, the parties submitted a letter regarding the bifurcation of discovery.  (ECF No. 25.)  Defendant requested the Court bifurcate discovery into two phases: (a) individual merits discovery and (b) class discovery.  (*Id.* at 1.)  Defendant also proposed the Court hear dispositive motions on whether the fax at issue here is exempt from the TCPA because (1) Plaintiff had given prior express consent to receive the fax, (2) the fax was not an advertisement,

and (3) there was an established business relationship between the parties. (*Id.* at 2.) Plaintiff opposed the bifurcation request. (*Id.* at 4-5.)

On September 27, 2024, the Court granted Defendant's bifurcation request and ordered the parties to submit a discovery and briefing schedule "related to the narrow, targeted issue of the merits of the named plaintiff's claim and Electrostim's defenses thereto." (ECF No. 33 at 2.) In addition to the discovery schedule, the parties stipulated to deadlines for summary judgment briefing "on the issue of whether Plaintiff's claim is barred by the defense of prior express invitation or permission." (ECF No. 34-1 at 1; ECF No. 35 at 1-2.) Summary judgment briefing followed. (ECF Nos. 40, 41, 42.)

## II.    LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) ("In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere

6

allegations, conclusions, conjecture, and speculation will not defeat summary judgment." (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995))). "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

## III.    <u>DISCUSSION</u>

Plaintiff alleges that Defendant sent an unsolicited fax in violation of the TCPA. (ECF No. 1.) Defendant moves for summary judgment on the narrow ground that "Plaintiff granted its prior express invitation or permission, i.e. consent, to receive the [fax]," so, Defendant argues, it did not violate the TCPA in sending the fax. (ECF No. 40-3 at 4.)

"The purpose of the TCPA, in part, is to curb the inundation of junk faxes." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 624 (3d Cir. 2020) (alterations adopted) (internal quotation marks omitted). Accordingly, the TCPA prohibits "any person within the United States, or any person outside the United States if the recipient is within the United States . . . [from using] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). An advertisement is "unsolicited" if it is sent "to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). "Thus, fax advertisements sent with the recipient's prior express invitation or permission (*i.e.*, solicited faxes) are not violative of the TCPA." *Cephalon*, 954 F.3d at 619.

In the Third Circuit, there is a two-part test to determine whether a fax qualifies as "solicited"—and thereby permitted—under the TCPA. A fax qualifies as solicited if (1) the recipient voluntarily provides her fax number to the sender and (2) the fax itself relates to the reason the recipient provided her fax number to the sender. *See id.* at 620. This test derives from the Third Circuit's opinion in *Cephalon*. There, a doctor received two faxes from a pharmaceutical

company.  *Id.* at 617.  Each fax consisted of an invitation to dine with company representatives who would be promoting certain products.  *Id*.  The parties did not dispute that the doctor willingly gave his fax number to the pharmaceutical company.  *Id.* at 620.  Nor did they dispute that, "after drug representatives had continued and sustained contact with [the doctor]," the doctor gave his fax number "in part for the purpose of having drug representatives contact [plaintiff] with information on the drugs."  *Id.* at 620 n.6.  And the drug representatives expressly asked the doctor whether "they could follow up with him and send him things."  *Id.* at 617 (alterations adopted) (internal quotation marks omitted).

The court held that the faxes were solicited because it was undisputed that (1) the recipient "voluntarily provided a business card with a fax number on it to [the sender]," and that (2) "the two faxes related to prior conversations [the defendant's] drug representatives had with" the plaintiff's representative.  *Id.* at 620, 625.  The court thus established a rule that "[t]he voluntary provision of a number—phone or fax—by a message-recipient to a message-sender, constitutes express consent such that a received message is *solicited* and thus not prohibited by the TCPA, if the message relates to the reason the number was provided."  *Id.* at 619 (emphasis in original).

While there is relatively little case law explaining the contours of the *Cephalon* inquiry, the Eastern District of Pennsylvania's opinion in *Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, Civ. No. 18-1903, 2020 WL 2793954 (E.D. Pa. May 29, 2020), *aff'd*, 58 F.4th 93 (3d Cir. 2023), proves helpful.  In *Millennium Health*, the plaintiff provided its fax number to the defendant—a laboratory that offers "medication monitoring and drug-testing services"—"for a very limited purpose: to obtain the results of patients' urine drug tests."  *Id.* *2, *7.  The defendant then sent a one-page fax "to its entire customer base."  *Id.* at *3.  The fax invited its recipients to a webinar about "opioid misuse and abuse" for injured workers and "the role of medication

8

monitoring" in caring for those workers. *Id.* The fax also previewed other webinars the defendant had hosted on drug testing. *Id.* at *3-4. With no evidence that "the defendant specifically asked in any way if it could send the plaintiff information beyond urine drug analyses," the court found that the fax was unsolicited under the TCPA. *Id.* at *7. The fax was not related to the reason the fax number was provided because it "extended beyond the limited purpose for which the plaintiff originally gave the defendant the fax number." *Id.*

Here, it is undisputed that the first prong of the *Cephalon* test is satisfied. On May 24, 2017, Dr. Basalaev signed and returned the filled-out letter of medical necessity which contained Plaintiff's fax number. (ECF No. 40-1 at 3; ECF No. 41-1 at 3, 8; ECF No. 42-1 at 3.) Both parties agree that this qualifies as Plaintiff voluntarily providing its fax number to Defendant. (*See* ECF No. 40-3 at 10 ("Plaintiff voluntarily provided [Defendant] with its fax number"); ECF No. 41 at 9-10 (agreeing that Plaintiff returned pre-filled form that included fax number and only contesting second element).)

But, as for the second prong, the undisputed facts do not establish that the March 25, 2020 fax "related" to the reason why Plaintiff gave its fax number to Defendant. It is undisputed that one reason Dr. Basalaev included Plaintiff's fax number on the 2017 letter of medical necessity was so that "pharmacists and medical providers may contact him if they have questions about the patient or the prescribed treatment." (ECF No. 41-1 at 6; ECF No. 42-1 at 2.) In other words, Dr. Basalaev disclosed the fax number so that he could field questions from the entities providing the electrostimulation products to ensure that the entities could provide effective treatment to the patient named on the prescription.

As in *Millennium Health*, this is a narrow purpose. There, a mass-circulated promotional webinar did not "relate" to drug test results for specific individuals. *See Millennium Health*, 2020

9

WL 2793954, at *7.  Similarly, here, the March 25, 2020 fax—the first contact between the parties in three years and a mass-circulated notification that Defendant was still providing its electrostimulation device services during the COVID-19 pandemic—was not a question posed by Defendant about the patient (G.S.) or the device prescribed (the Flex Gar) to the patient in the 2017 letter.  Therefore, at least as to this undisputed purpose, the fax message does not "relate[] to the reason the number was provided," so Defendant fails to demonstrate that there was "express consent such that [the] received message is *solicited*."  *Cephalon*, 954 F.3d at 619 (emphasis in original).[2]

The second potential purpose for providing the fax number—which is disputed—brings this case closer into *Cephalon*'s orbit but is still inadequate to award summary judgment in Defendant's favor.  Defendant argues Plaintiff included the fax number for the broad purpose of "facilitat[ing] the services authorized for its patients."  (ECF No. 40-1 at 3.)  Plaintiff disagrees and asserts that it only had a narrow purpose in sending the fax, which was solely related to G.S.'s prescription for the Flex Gar device.  (ECF No. 41-1 at 3-4.)

---

[2]     Defendant encourages the Court to apply a "low bar" in analyzing whether the fax is "related" to why the number was disclosed.  (*See* ECF No. 40-3 at 14 (citing *Bailey v. CVS Pharmacy, Inc.*, Civ. No. 17-11482, 2018 WL 3866701, at *7 (D.N.J. Aug. 14, 2018)).)  The Court declines to adopt such a framework.  Defendant's key district court case in support of this framework, *Bailey*, was decided pre-*Cephalon* on a motion to dismiss posture and relies on out-of-circuit, district court opinions for its permissive approach to consent.  *See Bailey*, 2018 WL 3866701, at *7.

In any event, *Bailey* is distinguishable. There, the plaintiff disclosed its phone number to CVS so that she could be informed when her prescription was ready.  *Id.* at *2.  The court found that she gave prior express consent to receive a message, which informed her that her order was ready with an added note that "Flu shots [were] available," because the message still "notified Plaintiff[] of the availability of prescription services."  *Id.* *2, *7.  In other words, she received the exact message she asked to receive, so the tack-on "Flu shots available" note did not push the message outside of the scope of consent.  Here, the 2020 fax was not a tack-on to an otherwise obviously responsive message.

If Defendant were correct and Plaintiff's purpose was more broadly to "facilitate services" for his patients, then sending a notice to Plaintiff that electrostimulation products were available during the pandemic could be "related" to why Plaintiff disclosed the number. However, whether Plaintiff had this broad purpose is disputed. And Dr. Basalaev's deposition testimony does not negate the dispute. (*See* ECF No. 40-5 at 5:2-7 ("[I]f I give a prescription and the pharmacist or the physical therapist has any questions they will not be able to contact me if they have any questions. So [for] ease in patient care I provide both the fax number and the phone number to facilitate it, the services.").) Indeed, "a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248, because it could view the deposition transcript to support a narrow reading of the purpose of disclosure (to enable relevant parties to contact Dr. Basalaev with questions about specific patients and treatment plans) in lieu of a broader purpose (to facilitate services to patients more generally). Therefore, because the issue of Dr. Basalaev's purpose in providing his fax number is in dispute, and because it goes to the heart of whether the fax was "related" to the reason the fax number was disclosed, summary judgment is not warranted.[3]

To the extent Defendant argues that prior express consent should be inferred from the "existing business relationship" between the parties, (ECF 40-3 at 4), the Court declines to award summary judgment to Defendant on these grounds.

The Third Circuit has suggested that courts may consider the business relationship between the parties in determining whether a recipient consented to receiving a fax. *See Cephalon*, 954 F.3d at 622 n.9 (stating that even though the TCPA "is silent with regard to *solicited* advertisements

---

[3]    To be sure, whether Dr. Basalaev sent the fax number with such a broad purpose is a question of fact for the jury. *Cf Espinosa v. County of Union*, 212 F. App'x 146, 159 (3d Cir. 2007) ("[M]otive is generally a fact question reserved for a jury"); *Greco v. NLRB*, 331 F.2d 165, 169 n.1 (3d Cir. 1964) ("Of course, since motivation is largely a question of intent, it is primarily an issue of fact.") (citations omitted).

in the context of an established business relationship," the statute "is not meant to curb communication in established business relationships," and faxes "from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient") (emphasis in original) (internal quotation marks and citations omitted). In *Cephalon*, to find prior express consent, the court drew on the fact that "drug representatives had continued and sustained contact with" the fax recipient and that there "was an established practice of drug representatives meeting with, following up with, and providing more information" to the fax recipient. *Id.* at 620 n.6, 622 n.9.[4]

Here, based on the current record, it appears no such business relationship exists under *Cephalon*. Far from "continuous and sustained contact," the undisputed facts reveal only one (patient-specific) communication between the parties three years prior to the fax at issue being sent. (ECF No. 41-1 at 7; ECF No. 42-1 at 3.) Defendant responds that, in the days after the fax at issue was sent, Plaintiff did not object to receiving the fax and sent a subsequent letter of medical necessity with its fax number on it. (ECF No. 40-1 at 4; ECF 40-3 at 14; ECF No. 41-1 at 5.) But Plaintiff's conduct after Defendant sent the fax is irrelevant because, under the TCPA, a fax is solicited only if there is "*prior* express invitation or permission." 47 U.S.C. § 227(a)(5) (emphasis added); *see also Gorss, Motels Inc. v. Lands' End, Inc.*, 997 F.3d 470, 477 (2d Cir. 2021) ("'[P]rior' permission requires that permission be given *before* the fax is sent.") (emphasis in original). Thus,

---

[4]    In addition to the Third Circuit's direction on the role a business relationship should play in determining whether a recipient consented to receiving a fax, the TCPA "explicitly permits *unsolicited* fax advertisements so long as there is, in part, 'an established business relationship' between the sender and the recipient." *Cephalon*, 954 F.3d at 622 n.9 (citing 47 U.S.C. § 227(b)(1)(C)(i)) (emphasis in original). But as Defendant—the moving party—indicates, the parties stipulated to briefing the narrow issue of prior express consent. (ECF No. 42 at 5 (citing ECF No. 35).) So, the statutory "[established business relationship] exception is not at issue." (ECF No. 42 at 5.) However, if the Court were to address the issue, it is unlikely the Court would find such a relationship was forged based on the current record for the reasons described *infra*.

the Court declines to award summary judgment in Defendant's favor based on the business relationship between the parties.[5]

Therefore, because there is a genuine dispute of fact as to the breadth of Plaintiff's purpose in disclosing its fax number—which is material to whether the fax was "related" to said purpose—and because Defendant's argument regarding the business relationship between the parties is unavailing as a matter of law, summary judgment in favor of Defendant is denied.[6]

---

[5]     The facts here are also distinguishable from other cases in which courts relied on the business relationship between the parties to find prior express consent. *See, e.g.*, *Gorss Motels*, 997 F.3d at 477 (fax solicited when recipient entered into written agreement that permitted company and its affiliates to "offer [] service[s]" and recipient had received, without objection, similar faxes from other affiliates in past); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1097, 1101 (11th Cir. 2019) (fax solicited when recipients entered into written agreement "to receive information about purchasing items from [company] affiliates, so [recipients] cannot complain that an affiliate sent them that kind of information"). Here, Plaintiff entered into no agreement with Defendant or its affiliates to receive product information, and there is no record of Plaintiff receiving similar faxes prior to receiving the fax at issue in this litigation. So there is no such prior business relationship to support a finding that a fax sent three years after the parties' last communication was solicited.

[6]     Plaintiff failed to move for summary judgment but requests that it be granted in its favor because Defendant "waived protection of the one-way intervention rule." (ECF No. 41 at 17.) Plaintiff's argument is misplaced. It is true that "a defendant can waive his protection against one-way intervention and agree to a pre-certification merits ruling." *Koehler v. USAA Cas. Ins. Co.*, Civ. No. 19-715, 2019 WL 4447623, at *4 (E.D. Pa. Sept. 17, 2019) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 762 (3d Cir. 1974)). But this waiver applies if a defendant in a class-action lawsuit is successful. In that scenario, the judgment is not binding on others beyond the named plaintiff because the judgment occurred pre-class certification. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (describing the problem of the one-way intervention rule and how the 1966 amendments to the Federal Rules of Civil Procedures ameliorated the problem). That waiver has no bearing on whether the Court should award summary judgment to Plaintiff *sua sponte*. Indeed, the Court will not do so because (1) Federal Rule of Civil Procedure 56(f)(1) requires providing "notice and a reasonable time to respond" when granting summary judgment for a nonmovant—neither of which have occurred here—and in any event (2) the Court believes there to be a genuine dispute of material fact.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and other good cause shown, Defendant's Motion for Summary Judgment (ECF No. 40) is **DENIED**.  An appropriate Order follows.


Dated: September 30, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE